HILL & MEREDITH v. FIRST STATE BANK OF HILLSBORO. (No. 7416.) *

(Court of Civil Appeals of Texas. Dallas. Nov. 20, 1915. Rehearing Denied Dec. 24, 1915.)

1. BILLS AND NOTES ⬅️519—ACTIONS—EVIDENCE—SUFFICIENCY.

In an action on a note which defendants indorsed before negotiation, evidence *held* to warrant a finding that they were primarily liable.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1802; Dec. Dig. ⬅️519.]

2. CONFUSION OF GOODS ⬅️11—COMMINGLING OF ASSETS—RIGHTS OF CREDITORS.

A bank to which contractors were indebted being approached by defendants to negotiate a note given by the contractors refused to do so but consented to negotiate a new note executed by the contractors and on which defendants became primarily liable. The bank promised if possible to protect defendants under the securities which it held. The contractor and another firm which was indebted to the bank each mortgaged its mules and horses. A second mortgagee without consent carried off a number of the animals, and thereafter the bank, finding all of the animals commingled, foreclosed its mortgages thereon. It applied the proceeds of such sale to its own securities in such a manner as to leave defendants liable. *Held*, that recovery on the note by the bank could not be defeated on the theory that it had improperly commingled goods.

[Ed. Note.—For other cases, see Confusion of Goods, Cent. Dig. §§ 12, 13; Dec. Dig. ⬅️11.]

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by the First State Bank of Hillsboro against Hill & Meredith. From a judgment for plaintiff, defendant appeals. Affirmed.

R. M. Vaughan and J. D. Abney, both of Hillsboro, for appellant. Morrow & Morrow, of Hillsboro, for appellee.

RAINEY, C. J. In disposing of this suit it is only necessary to state that appellee instituted this action to recover on a note executed by Bennett & Son and against Hill & Meredith, who are alleged to be primarily liable thereon. Appellants pleaded that they were not primarily liable, but only as indorsers on said note, and further that appellee had sold mortgaged property, the proceeds of which were sufficient to pay off and cancel the note sued on, but that said proceeds had been applied to the discharge of other notes and this one left uncanceled. The case was tried by the court without the intervention of a jury, and judgment rendered for appellee, from which Hill & Meredith appeal.

The court filed conclusions of fact, which we find are supported by the evidence, and here adopt the same, and we here copy the first, second, third, fourth, sixth, eighth, and ninth subdivisions:

I. "I find that the First State Bank of Hillsboro, Texas, a corporation, on the 12th day of June, 1913, had notes against S. P. Bennett & Son, a firm composed of S. P. Bennett and J. P. Bennett, as follows: First note dated April 12, 1913, for $6,548; first note dated March 15, 1913, for $50; first note dated March 12, 1913, for $1,113.36; first note dated ——, for $120. That on the same date it held notes against Key & Bennett, a firm composed of A. Key and S. P. Bennett, as follows: First note dated December 20, 1912, for $6,735.60; first note dated January 4, 1913, for $1,362.46; and an overdraft amounting to $856.81. That on the same date it held a note against S. P. Bennett dated March 28, 1913, for $5,402.69, and an overdraft against A. Key amounting to $38.61. That all of said notes bore interest at the rate of 10 per cent. per annum and carried a provision, providing for 10 per cent. of principal and interest as attorneys' fees if placed in the hands of an attorney after default, and that on said date, June 12, 1913, all of said notes were past due, no payments either on principal or interest had been made and the same had been placed in the hands of attorneys for collection after default, and the plaintiff had become liable to pay the attorney's fee specified in the notes, and the same had accrued against the makers of said notes. That all of said notes, except the note for $1,113.36 against S. P. Bennett & Son, and the note for $120 against S. P. Bennett & Son, and the note for $50 against S. P. Bennett & Son, were renewals of notes previously given."

II. "That on July 6, 1912, S. P. Bennett executed and delivered to the plaintiff a chattel mortgage conveying property described as follows: 'My entire outfit of stock composed of mules and horses now being used in grading an interurban railroad now being built by the Southern Traction Company from Dallas to Waco being 53 miles, weight from 1,100 to 1,400 pounds each, four years to ten years old; also seven head of horses, five to ten years old, weight from 1,300 to 1,700 pounds.' Said mortgage was given to secure the payment of a note in favor of the plaintiff, executed by S. P. Bennett,

due October 6, 1912, for $———; also to secure any and all other sums of money that the said S. P. Bennett might owe to the plaintiff at that time or subsequently during the year 1912, and all notes executed to the plaintiff during that year."

III. "That on August 28, 1912, the defendants, S. P. Bennett & Son, executed a chattel mortgage to plaintiff, covering 76 head of mules, each four to ten years old, and 8 head of horses, each four to ten years old, consisting of the entire outfit of work stock employed by the said S. P. Bennett & Son in grading the interurban road from Dallas to Waco. Said mortgage was executed to secure all indebtedness due by the said parties to the said bank during the years 1912 and 1913 and all notes executed by them during said time."

IV. "That each of said mortgages was registered in the counties of Hill, Ellis, and Dallas in accord with the law for the registration of chattel mortgages."

VI. "That on the 3d day of October, 1912, S. P. Bennett executed a chattel mortgage to W. T. Hale to secure an indebtedness of $12,446.30, which mortgage was duly registered in the county court of Hill county and Dallas county on the 8th day of October, 1912, and covered 98 head of mules."

VIII. "Shortly after the giving of the mortgage of Bennett to Hale, mentioned above, without the knowledge or consent of plaintiff, W. T. Hale removed 50 head of the mules covered by the plaintiff's mortgage to another state. At the time the mules were taken by Hale the Bennett & Son mules and S. P. Bennett mules were all together, and were not identified or distinguishable, so far as the plaintiff was concerned, one from another. The plaintiff learned that Hale had taken these 50 mules in July, 1913, for the first time, and at that time in undertaking to foreclose its mortgage found the remainder of the mules and horses, on which it had a mortgage in Dallas county. They were thrown together at that time and the plaintiff was unable to distinguish which were the S. P. Bennett & Son mules and horses and which were the S. P. Bennett mules and horses, the plaintiff having no previous knowledge of their having been thrown together, and on the 12th day of June it took possession of said mules and horses, being 78 head of mules and 18 head of horses and sold them under its power of sale, at private sale for $12,000."

IX. "The $12,000 proceeds of the sale of the mules and horses were applied as follows:

In satisfaction of one note of S. P.
Bennett & Son............... $7,322.85
And of another note of S. P. Ben-
nett & Son for.............. 56.36

—and applied $4,620.82 on the note of S. P. Bennett, dated March 28, 1913, for $5,492.60, which was a renewal of a previous note held by the bank at the time it took the mortgage from S. P. Bennett. This left unpaid the attorney's fees, principal, and interest, the S. P. Bennett & Son note for $120, the entire indebtedness of Key & Bennett and of A. Key, and the balance of $1,548.50 of S. P. Bennett, and also left unpaid the principal, interest, and attorney's fees on the note dated March 7, 1913, signed S. P. Bennett & Son for $1,113.36."

[1] The first and second assignments present the question whether or not appellants were primarily liable as makers or only liable as a mere indorser. While there was a contradiction in the testimony we think the court rightfully held the appellants liable as original promisors on the note.

W. R. Masterson, president of the appellee bank, testified as follows:

"With reference to the Hill & Meredith matter, it came up in this way: In a conversation that I had with Mr. Hill he stated that he and Mr. Meredith owned this note of $1,113.36, I think, payable to the firm of Hill & Meredith, and he offered to discount it to the bank. He offered to take $1,000 for the note of $1,113.36. That transaction was had with me as an official of the bank. I told Mr. Hill that he couldn't use the note. Hill & Meredith were customers of the bank at that time. I told him that under our contract that we couldn't give him any protection on that note, and while we had advanced them all the money that we cared to and would, that if we could give them the benefit of any protection, we would do it, and that if we could we would not charge them discount; that it probably could be arranged differently in the form of another note, so that we might be able to give them some protection according to our contract with Key & Bennett or according to the security we have. I think I said it at that time that we would consider the matter and probably discuss it with our attorneys and would see him again about it. I think that was the substance of the conversation at that time. After that I saw Mr. Hill again in the bank; my recollection is he came to the bank and took it up with us further. I told him that if he would put it in this form, have Mr. Bennett execute a note in favor of the bank and him sign it or indorse it, that we would advance the money on it, and in that way we could probably give him some protection; that we would discount the note and advance Hill & Meredith the money. I filled out the note and it was signed by S. P. Bennett & Son, per Jim Bennett, and Mr. Hill then signed it on the back, on the back of the note, and I placed the money to their credit; that is, less the discount of $13. The note was given on March 7th and did not begin to draw interest until March 20th, I believe. I had been familiar with the handling of commercial paper and notes before that and had knowledge of what effect their writing their names on the back of that note would be. The first note that they presented to me was payable to Hill & Meredith, but this one that I finally took was made payable to the First State Bank, and the name Hill & Meredith was written by Mr. Hill on the back of the note. That was done before I advanced the money; it was all done about the same time. It was upon that kind of agreement that I agreed to let Hill & Meredith have the money. I would not have bought the first note that was brought to me with Hill & Meredith's indorsement on it."

Hill, in effect, says that there was nothing said about it, except indorsing it as an indorser. The court was warranted in accepting Masterson's version of the matter, which shows that the bank did not accept the note with Hill as a mere insurer, but that Hill & Meredith were to be primarily liable.

[2] The contention of appellants in substance is, that the court erred in finding against appellants for that appellee held two mortgages, one by S. P. Bennett & Son and the other by S. P. Bennett. That appellee sold under the mortgage 93 head of mules and horses, which were commingled and sold together, and the proceeds of said property that was included in the mortgage executed by said Bennett & Son was never ascertained so as to make a proper accounting of the proceeds realized on account of the sale of the horses and mules included in said mortgage executed by S. P. Bennett & Son. It seems doubtful that appellants had such an interest in the mortgages as to rely on the doctrine of confusion or commingling of goods. Masterson, according to his testimony, only prom-

ised to protect them under the securities held by the bank, if he could do so, and it seems that the proceeds realized were not sufficient for that purpose after the indebtedness of the bank was satisfied. It was further shown that there was no intention of the bank to act wrongfully in the commingling of the mules and horses. When they took charge of the said mules and horses they were all together, and they had no means of knowing which belonged to S. P. Bennett & Son and those belonging to S. P. Bennett. Besides 50 head of the said stock had-been taken under a second mortgage by one Hale and carried out of this state, and those left were not sufficient to pay off the indebtedness of Bennett & Son and S. P. Bennett to the bank. Again the mortgage did not identify which of said stock belonged to either party. Also there was nothing to show how many of said stock that belonged to said S. P. Bennett & Son and how many that belonged to S. P. Bennett were sold under the mortgage. The two defendants owed the bank more than the horses sold for, and there is nothing showing that appellee acted wrongfully in any way; nor is there any claim by the Bennetts to appellee's action in the application of the proceeds. This being the condition of the matter we think the appellants are not in a position to seek the relief sought by them.

The judgment is affirmed.